IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS JULY, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0539-WS-B |
| | ) |
| BOARD OF SCHOOL | ) |
| COMMISSIONERS, etc., et al., | ) |
| | ) |
|     Defendants. | ) |

ORDER

This matter is before the Court on the plaintiffs' motion for class certification. (Doc. 58). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 52, 59, 67, 68, 73, 74),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

BACKGROUND

According to the complaint, (Doc. 1), the seven named plaintiffs are African-Americans who are or were employed by the entity defendant ("the Board") as assistant principals.[2] While some of the plaintiffs have served as principals, the Board "has never allowed" any of them to serve as principal of a school with a predominantly white student body. This is because the Board "largely excludes African-Americans from the position of principal at schools which have predominantly White student bodies, and segregates

---

[1] The plaintiffs' unopposed motion to exceed the page limitation applicable to reply briefs, (Doc. 72), is **granted**. The defendants' motion to strike affidavits, (Doc. 66), is **denied**.

[2] The complaint also names Roy D. Nichols, Jr., as a defendant, both in his individual capacity and in his official capacity as Board superintendent. (Doc. 1 at 6). The plaintiffs later dropped Nichols as a defendant in his individual capacity and substituted his successor, Martha L. Peek, in her official capacity. (Docs. 37, 39).

African-Americans by limiting them to principalships of schools which have predominantly African-American student bodies." (*Id*. at 13-14). The complaint advances theories of "disparate impact and the pattern and practice of racial discrimination." (*Id*. at 14). The single count of the complaint alleges race discrimination and segregation in employment in violation of Section 1981 (via Section 1983) and Title VII. (*Id*. at 22-24). The plaintiffs seek, for each member of the class, a declaration that the Board's employment practices have and do violate their legal rights; a permanent injunction against continued violations of Title VII and Section 1981; and make-whole relief in the form of back pay (including fringe benefits and interest), front pay, offers of promotion and compensatory damages. (*Id*. at 25-26).

The plaintiffs seek to represent a class defined as follows: "All present and former African-American employees of the School Board who, at any time since September 16, 2007, have held a certificate issued by the Alabama State Department of Education qualifying them to be a principal in Mobile County." (Doc. 58 at 2).[3]

## DISCUSSION

"The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc*., 350 F.3d 1181, 1187 (11th Cir. 2003). "Questions concerning class certification are left to the sound discretion of the district court." *Cooper v. Southern Co*., 390 F.3d 695, 711 (11th Cir. 2004), *overruled in part on other grounds*, *Ash v. Tyson Foods, Inc*., 546 U.S. 454, 457-58 (2006).

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc*., 382 F.3d 1241, 1250 (11th Cir. 2004). The Court

---

[3] This opening date is exactly four years prior to the filing of the lawsuit. It is almost two years earlier than the August 4, 2009 date proposed in the complaint. (Doc. 1 at 6). Neither side has remarked on the inconsistency.

pretermits consideration of standing and Rule 23(a) because it is plain that the plaintiffs cannot satisfy any of the Rule 23(b) alternatives.

Rule 23(b) provides three routes to class certification, the second and third of which the plaintiffs invoke.

A class action may be maintained if Rule 23(a) is satisfied and if:
> …
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. …

Fed. R. Civ. P. 23(b). The plaintiffs argue that class certification is appropriate under Rule 23(b)(2), Rule 23(b)(3), or by a combination of both.

### A. Pattern or Practice.

Because it figures prominently in the plaintiffs' argument, the Court pauses to consider the contours of a pattern-or-practice theory in an employment discrimination context.

Pattern or practice is one of two theories available to a Title VII plaintiff to prove intentional discrimination. *Cooper*, 390 F.3d at 723. Under this theory, "the plaintiff must prove, normally through a combination of statistics and anecdotes, that discrimination is the company's standard operating procedure." *Id*. at 724 (internal quotes omitted). "A pattern or practice claim may be brought under § 1981 as well as Title VII, in which case Title VII's substantive rules inform the § 1981 rules of decision." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 965 n.17 (11th Cir. 2008).

Title VII expressly authorizes the EEOC to bring a pattern or practice claim on behalf of a group. 42 U.S.C. § 2000e-6(a), (c). But "[a] pattern or practice claim … may also be brought under Title VII as a class action …." *Davis*, 516 F.3d at 965. Such a claim may be brought as a class action under Section 1981 as well. *Id*. at 965 n.18.

3

In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the government brought a pattern-or-practice claim under Section 2000e-6. The Supreme Court explained that such an action proceeds in two stages or phases. In "the initial, 'liability' stage," the plaintiff attempts to show that "unlawful discrimination has been a regular procedure or policy followed by an employer …." *Id*. at 360. If that case is made and not rebutted by the employer, "a trial court may then conclude that a violation has occurred and determine the appropriate remedy." *Id*. at 361. The remedy sought determines the proceedings necessary to its award.

"Without any further evidence from the [plaintiff], a court's finding of a pattern or practice justifies an award of prospective relief," including an injunction against further violations. *Teamsters*, 431 U.S. at 361. But if "individual relief" is sought, "a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id*. At this "second, 'remedial' stage of trial," the "proof of the pattern or practice [established in the first phase] supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id*. at 362. The plaintiff thus "need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id*.[4] Once the plaintiff has done so, "the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id*.

The *Teamsters* paradigm is still the law, and it applies to class actions asserting a pattern or practice theory. *Davis*, 516 F.3d at 966.

**B. Rule 23(b)(2).**

"Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of candidates for Rule 23(b)(2) certification. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The plaintiffs rely on this

---

[4] As to non-applicants, each plaintiff must show that "he would have applied for the job had it not been for those [discriminatory] practices" of the employer. *Id*. at 364, 368.

4

and similarly generic statements to argue that their class may be certified under subsection (b)(2).  (Doc. 59 at 28-30).  They ignore the Supreme Court's more recent ruling in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), at their peril.

In *Dukes*, the High Court held that "claims for monetary relief may [not] be certified under" Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief."  131 S. Ct. at 2557.  In *Dukes*, as here, the plaintiffs alleged a pattern or practice of discrimination under Title VII.  *Id*. at 2552.  As here, the *Dukes* plaintiffs sought back pay in addition to injunctive and declaratory relief but nevertheless requested certification under Rule 23(b)(2).  *Id*. at 2547.  The Supreme Court refused, concluding that the requested back pay relief was not incidental to the prospective relief.  *Id*. at 2557.

Even prior to *Dukes*, the Eleventh Circuit recognized that "monetary relief … is only available in a Rule 23(b)(2) class action if it is incidental to the requested injunctive or declaratory relief."  *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1265 n.8 (11th Cir. 2009).  After the defendants pointed this out in their opposition, (Doc. 67 at 11), the plaintiffs suggested that their request for monetary relief is incidental because, under *Teamsters*, it does not become an issue until the second phase, after injunctive and declaratory relief has been granted in the first phase.  (Doc. 73 at 11-12).  But *Dukes* precludes this argument as well.

Rule 23(b)(2), the *Dukes* Court ruled, "does not authorize class certification when each class member would be entitled to an individualized award of money damages," 131 S. Ct. at 2557, and a Title VII defendant in a pattern or practice case "is entitled to individualized determinations of each employee's eligibility for backpay."  *Id*. at 2560.  The *Dukes* Court acknowledged the staggered proceedings applicable to pattern or practice cases under *Teamsters* but did not consider the mere temporal priority of injunctive relief to justify deeming second phase determinations of back pay to be incidental under Rule 23(b)(2).  Instead, the Court ruled as follows:

> We have established a procedure for trying pattern or practice cases that gives effect to these statutory requirements [of Section

5

> 2000e-5(g) that back pay cannot be awarded when the employer proves it took action against the employee for any reason other than discrimination]. When the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, "a district court must usually conduct additional proceedings … to determine the scope of individual relief." *Teamsters*, 431 U.S. at 361 ….  At this phase, the burden of proof will shift to the company, but it will have the right to raise any individual affirmative defenses it may have, and to "demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id*. at 362 ….
>
> … [A] class cannot be certified on the premise that [the employer] will not be entitled to litigate its statutory defenses to individual claims. And because the necessity of that litigation will prevent backpay from being "incidental" to the classwide injunction, respondents' class could not be certified even assuming, arguendo, that "incidental" monetary relief can be awarded to a 23(b)(2) class.

131 S. Ct. at 2561. The Board has asserted that "[a]ll employment decisions made by Defendant were made upon the basis of factors other than race." (Doc. 9 at 6).  Under *Dukes*, the Board's entitlement to offer such proof on an individual basis dooms the plaintiffs' request for certification under Rule 23(b)(2).[5]

Even prior to *Dukes*, the Eleventh Circuit recognized that, when compensatory damages are sought, certification under Rule 23(b)(2) is difficult if not impossible.[6] In

---

[5] Prior to *Dukes*, the Eleventh Circuit ruled that "[b]ack pay is considered equitable relief and can therefore be awarded in a case certified under Rule 23(b)(2)." *Cooper*, 390 F.3d at 720. The Supreme Court, however, noted that Rule 23(b)(2) speaks of injunctions and declaratory judgments, not of equitable relief generally.  Because back pay is neither declaratory nor injunctive relief, "it is irrelevant" that it may be considered an equitable remedy.  131 S. Ct. at 2560.

[6] *See, e.g., Davis*, 516 F.3d at 965 n.18 (when a plaintiff seeks compensatory and punitive damages under Section 1981 as well as back pay under Title VII, "[t]he maintenance of a Rule 23(b)(2) class action for all the relief these two statutes together afford is problematical."); *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (where ADA plaintiffs sought compensatory damages for pain and suffering, emotional distress and humiliation, Rule 23(b)(2) certification was inappropriate because all class members "would not be automatically entitled" to such damages and because "assessing damages for these inherently individual injuries compels an inquiry into each class member's individual circumstances"); *see also Cooper*, 390 F.3d at 720 (where Title VII plaintiffs sought compensatory and punitive damages, Rule 23(b)(2) certification was inappropriate under *Murray*).

6

addition to back pay, the complaint also demands compensatory damages for each class member, underscoring the impropriety of certification under this rule.

### C. Rule 23(b)(3).

The two indispensable requirements for certification under Rule 23(b)(3) are predominance and superiority. The Court need not reach the second requirement because the first is not satisfied.

"In determining whether class or individual issues predominate in a putative class action suit, we must take into account the claims, defenses, relevant facts, and applicable substantive law …." *Klay*, 382 F.3d at 1254. The defenses to be considered include affirmative defenses. *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1176-77 (11th Cir. 2010). "[T]he Rule requires a pragmatic assessment of the entire action and all the issues involved." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (internal quotes omitted).

The point of this review is "to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Klay*, 382 F.3d at 1254. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Id*. at 1255 (internal quotes omitted). Ordinarily, "that individualized determinations are necessary to determine the extent of damages allegedly suffered by each plaintiff" is of itself "insufficient to defeat class certification under Rule 23(b)(3)." *Id*. at 1259. Instead, "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." *Id*. at 1260. As another way of looking at the question of predominance, "if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important." *Id*. at 1255.

The plaintiffs identify the common question as whether the Board engaged in a pattern or practice of assigning principals based on race. (Doc. 59 at 32, 33). There are in addition, however, a number of individualized questions – addressing both liability and damages – that prevent this single common question from predominating.

As noted in *Teamsters* and *Dukes*, the existence of a pattern or practice of discrimination does not of itself entitle any particular plaintiff to back pay or other monetary relief. On the contrary, the Board "is entitled to individualized determinations of each employee's eligibility for backpay." *Dukes*, 131 S. Ct. at 2560. There are at least two steps in this process. First, each plaintiff must separately establish that he or she applied for a particular position or would have done so but for the Board's discriminatory practices. *Teamsters*, 431 U.S. at 367-68. This is a "difficult task," and it must be undertaken "with respect to each specific individual." *Id*. at 364, 371. Second, since proof of the pattern or practice supports an inference that any individual decision was the product of discrimination but does not conclusively resolve the issue, *id*. at 362, the Board may attempt to "demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id*.; *accord Dukes*, 131 S. Ct. at 2561. As the *Teamsters* Court observed, "[t]he court will have to make a substantial number of individual determinations in deciding which of the minority employees were actual victims of the company's discriminatory practices." 431 U.S. at 371-72.

As noted, the Board intends to offer such evidence. Indeed, the Board argues that its evidence of the reasons for the selection of a particular principal and for the non-selection of a particular class member will be unique for each, not only because each candidate is different but also because the relevant factors – including without limitation a school's student body, its faculty, and the community it serves – vary between schools and vary over time within a given school, as do outside agency requirements. (Doc. 67 at 14). The plaintiffs do not challenge this assertion, which suggests an almost endless procession of evidence, unique to each class member and to each decision, thereby amplifying the individual liability determinations that must be made.

The plaintiffs acknowledge that these are individual issues. (Doc. 73 at 15). However, pointing to *Teamsters*' staged analysis, they insist that these individualized questions are "not relevant to the issue of liability" for purposes of *Klay*'s predominance analysis because they "cannot arise until after a finding of liability." (*Id*. at 14-15). The plaintiffs appear to believe that only the first stage under *Teamsters* concerns liability. But *Teamsters*' description of the first phase as the "liability stage" and of the second phase as the "remedial stage" does not magically convert all second-phase questions into damages issues. As noted, pattern or practice is a theory of intentional discrimination, and an employer cannot be liable to an individual under that theory without a finding of discrimination against that individual. Such a finding cannot be made until after the individual plaintiff has shown that he or she applied (or would have done so but for the unlawful practice) and until after the defendant has presented its evidence that the plaintiff was or would have been denied the position for non-discriminatory reasons. These questions are precursors to damages in the sense that all questions concerning liability are, but they are not "damages issues" any more than is the color of the traffic light in a personal injury case. The *Dukes* Court made this clear when it described the issues to be decided in the second phase as "*liability* for sex discrimination and the backpay owing as a result." 131 S. Ct. at 2561 (emphasis added).

In addition to these substantial individual issues concerning liability are the individual issues concerning damages. The complaint seeks compensatory damages for each class member. The plaintiffs identify these damages as including emotional distress. (Doc. 59 at 14 n.4). Their effort to recover such damages "must 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,'" including "'how did [the discrimination] affect each plaintiff emotionally and physically at work and at home.'" *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1240 (11th Cir. 2000) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998)). And since the reality and quantum of emotional distress depends in part on physical and other manifestations, individual proof of "what treatment did each plaintiff receive and at what expense" will be injected, "and so on and so on." *Allison*, 151 F.3d at 419. "Under such

circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." *Id*. (internal quotes omitted); *see also Cooper*, 390 F.3d at 721 ("[D]etermining the level of damages to which each class member was entitled plainly would require detailed, case-by-case fact finding, carefully calibrated for each individual employee.").[7]

Under *Klay*, upon which the plaintiffs rely, the single common issue they raise does not predominate. First, "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification," 382 F.3d at 1260 and this case presents both multiple significant individualized questions going to liability and multiple significant individualized assessments of damages. Second, the addition of each new plaintiff "requires the presentation of significant amounts of new evidence," *id*. at 1255, because each new plaintiff must introduce separate, individualized evidence that she applied for a position as principal at a predominantly white school (or that she would have applied but for the Board's discriminatory practice) and of the existence, length and severity of the emotional distress she has experienced as a result of the discrimination, and because the defendant will, for each new plaintiff, be entitled to present separate, individualized evidence as to why that plaintiff was not, or would not have been, selected for a particular position. Third, common issues predominate "if they have a direct impact on every class member's effort to establish liability *and* on every class member's entitlement to injunctive *and* monetary relief," *id*. at 1255 (emphasis added), but the existence of a pattern or practice of discrimination does not have a direct impact on each class member's entitlement to monetary relief, only the incidental impact of not precluding such relief.

---

[7] Also to be considered in evaluating claims of emotional distress in the Title VII context is whether the plaintiff lost the esteem of her peers. *Akouri v. Florida Department of Transportation*, 408 F.3d 1338, 1345 n.5 (11th Cir. 2005). Of course, the defendant may also introduce evidence of mitigating circumstances. *Id*.

The parties have cited no binding case addressing certification of a Title VII pattern or practice case under Rule 23(b)(3).[8] The Court has found a single example, and it is not favorable to the plaintiffs.

In *Cooper*, the plaintiffs brought suit under Title VII and Section 1981, alleging a pattern or practice of race discrimination. 390 F.3d at 702-03. The Eleventh Circuit found no abuse of discretion in the trial court's determination that the plaintiffs' evidence did not support the pattern-or-practice predicate of their claim. *Id*. at 719. But the Court went on to rule that, even had there been an abuse of discretion in this regard, certification under Rule 23(b)(3) was still properly denied because "the individual determinations on liability and damages necessary for the individual plaintiffs to succeed would require highly fact-specific inquiries concerning each plaintiff." *Id*. at 720, 722-23. Despite its vagueness, *Cooper* suggests that the mere existence of a pattern or practice does not satisfy the predominance inquiry even in a *Teamsters* scenario.

Two other Eleventh Circuit opinions have rejected certification under Rule 23(b)(3) when it was sought based on an overarching policy of discrimination. In *Jackson v. Motel 6 Multipurpose, Inc*., 130 F.3d 999 (11th Cir. 1997), the plaintiffs alleged a practice or policy of refusing to rent to non-whites, segregation of non-white guests, and provision of substandard services to non-white guests, in violation of Title II and Section 1981. *Id*. at 1001-02. The Court held that the common issue of the existence vel non of such a practice or policy did not predominate over the individual issues because, even were such a policy to be proved, the class members' claims "will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination." *Id*. at 1006. In *Rutstein,* the plaintiffs alleged a policy or practice of discrimination against Jewish individuals and businesses with respect to business accounts, in violation of Section 1981. 211 F.3d at 1230, 1232, 1235. The Court again

---

[8] This is not terribly surprising since, until the passage of Section 1981a in 1991, a Title VII plaintiff could not recover compensatory or punitive damages and since, until *Dukes* was decided in 2011, back pay was recoverable in a Rule 23(b)(2) class action due to its equitable nature. The Eleventh Circuit confirmed in 2000 that only equitable relief had ever been sought under the *Teamsters* paradigm. *Rutstein,* 211 F.3d at 1239.

11

held that the common issue of this policy did not predominate over individual issues concerning each class member's effort to establish such an account, because the policy of discrimination, even if proved, "cannot establish that the company intentionally discriminated against every member of the putative class." *Id*. at 1235-36.

The problem is similar under Title VII. While a pattern or practice established under *Teamsters* carries more evidentiary significance than one established in other contexts, as discussed above it does not of itself establish that the defendant discriminated against any particular person. Thus, before the defendant can be declared liable to any class member for monetary or other individual relief, the class member must, and the employer may (and here, will) introduce substantial additional evidence particular to that class member. Except for the burden of proof being shifted to the employer, this scenario is no different than it was in *Jackson* or *Rutstein*. The individual issues concerning damages tilt predominance even further away from the plaintiffs.

Several sister courts within the Circuit have reached similar conclusions. In *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655 (N.D. Ga. 2001), the plaintiffs alleged a pattern or practice of discrimination under Title VII and Section 1981. *Id*. at 657-58. The Court concluded that the common issue of the pattern or practice did not predominate over individual issues. *Id*. at 681-86. Like this Court, the *Reid* Court identified "[t]he true problem with certifying Plaintiffs' discrimination claims under Rule 23(b)(3) [as] not merely a question of relief but a question of liability itself." *Id*. at 684. "Claims of discrimination, in employment or elsewhere, depend heavily on the specific circumstances and conditions in which the victim finds himself or herself. An individual's qualifications, experience, and background for a particular job or contract must be considered in any case where discrimination is alleged. [citations omitted] Such individual issues are present in every employment discrimination claim regardless of the type of relief sought, although claims for damages certainly enhance such issues. This is especially true where the plaintiffs' claims involve allegations of discrimination in promotions …, which are by their very nature extremely individualized and fact-intensive claims." *Id*.

The *Reid* plaintiffs, like the plaintiffs here, argued that the *Teamsters* presumption "renders predominant … the common issue of Defendants' alleged pattern and practice of discrimination." 205 F.R.D. at 685. But, the *Reid* Court responded, cases employing *Teamsters* "almost uniformly" concern certification under Rule 23(b)(2), where the predominance of common or individual questions is immaterial. *Id*.[9] As long as certification is sought under Rule 23(b)(2), "the particularized issues inherent in employment discrimination claims matter little to the class certification decision." *Id*. "Once under the framework of Rule 23(b)(3), on the other hand, these same issues present intrinsic problems for class certification that must be overcome by those seeking certification, no matter what type of relief is sought." *Id*.

In *Adler v. Wallace Computer Services, Inc*., 202 F.R.D. 666 (N.D. Ga. 2001), the plaintiffs claimed a pattern or practice of sex discrimination in violation of Title VII. *Id*. at 669. The Court ruled that the defendant's "pattern and practice of discrimination may be relevant in a particular case, but it does not establish that the company discriminated against each member of the putative class." *Id*. at 672. "Individual issues still exist," including the requirement that each class member prove she experienced an adverse employment action and the defendant's "opportunity to show that the employee was refused a promotion, paid less, or terminated for a legitimate nondiscriminatory reason." *Id*. "These individual issues related to liability," *id*., and they "predominate over the one common issue noted by Plaintiffs – [the employer's] alleged pattern and practice of discrimination." *Id*. Moreover, "[t]he predominance problem here is compounded by the fact that the compensatory and punitive damages requested require individualized proof." *Id*. at 673.

In *Faulk v. Home Oil Co*., 186 F.R.D. 660 (M.D. Ala. 1999), the plaintiffs brought suit under Title VII asserting a pattern or practice of race discrimination. *Id*. at 661, 663. The Court refused certification under Rule 23(b)(3) despite this allegation, noting that "[q]uestions affecting individual members, such as how they were discriminated against

---

[9] While leaving room for a possible exception, the *Reid* Court cited no case applying *Teamsters* in a Rule 23(b)(3) context.

13

and how it affected them individually, involve not merely 'separate issues concerning damages,' but differences in whether individual members can prove their claims." Id. at 664. Moreover, "[e]ntitlement to recovery on the plaintiffs' claims for compensatory and punitive damages will come not merely from a finding of liability on the common issues, but from individualized proof of actual injury." *Id*.

For reasons already stated, the Court finds itself in agreement with its brethren in *Reid*, *Adler* and *Faulk*.  The plaintiffs understandably cite none of these decisions.  Instead, they present several trial court opinions from the District of Columbia, all for the proposition that predominance automatically exists any time a single issue or element of a claim may be established by common proof.  Whatever the relative merits of such an approach, it is decidedly not the law of this Circuit.

The plaintiffs also offer the Supreme Court's recent opinion in *Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds*, 131 S. Ct. 1184 (2013).  According to the plaintiffs, *Amgen* stands for the proposition that, if the plaintiffs' failure to prove a threshold common issue would doom the lawsuit (as when the common issue is an essential element of the claim), the common issue necessarily predominates over subsequent individual issues.  (Doc. 73 at 13-14).  But *Amgen* says no such thing.  The *Amgen* Court ruled only that, if the failure of the threshold common issue would end the lawsuit, individual issues *generated by that failure* cannot predominate because the failure of the lawsuit means they will never be reached.  *Id*. at 1196.[10]  Here, the many individual issues in this case do not arise only upon the plaintiffs' failure to prove a pattern or practice; they are present even if such a pattern or practice is proved and therefore must be weighed in measuring predominance.

---

[10] In *Amgen*, the common issue was materiality.  Failure to prove materiality would preclude the plaintiffs from proving reliance on a group basis, because it would eliminate any fraud-on-the-market theory.  Thus, failure to prove materiality would require individual proof of reliance.  But, since materiality was also an essential element of the securities fraud claim, failure to prove materiality would end the lawsuit without the individual reliance issues being reached. 131 S. Ct. at 1195-96.

14

Certification of Title VII pattern-or-practice class actions under Rule 23(b)(2) remains freely available, although the attractiveness to plaintiffs of this approach is diminished now that *Dukes* precludes the recovery of back pay or other individual monetary relief in such an action.  As this case reflects, certification of a Title VII pattern-or-practice class action under Rule 23(b)(3) is extremely problematic.  Whether these restrictions on the use of the class action vehicle in employment discrimination cases represent good policy is for others to debate; the Court's task is to apply Rule 23 in light of the governing principles.  Having done so, the Court concludes that common issues do not predominate and that certification under Rule 23(b)(3) must therefore be denied.

### D.  Hybrid Certification.

The plaintiff proposes that the Court certify a class under Rule 23(b)(2) as to their claim for declaratory and injunctive relief and another class under Rule 23(b)(3) as to their claim for monetary relief.  (Doc. 59 at 37).  Since, as addressed in Part C, there can be no certification under Rule 23(b)(3), neither can there be certification under both that rule and Rule 23(b)(2).

### E.  Disparate Impact.

The plaintiffs' briefing focuses on pattern or practice but contains isolated references to disparate impact.  (Doc. 59 at 16, 21-22, 26, 34).  The Court thus assumes that the plaintiffs seek certification based on a disparate impact theory.

"To prove disparate impact, a plaintiff *must* establish … a specific, facially neutral employment practice …."  *Cooper*, 390 F.3d at 716 (emphasis in original).  The plaintiffs, however, identify no practice displaying these qualities.  According to the plaintiffs, the Board selects principals based on the recommendation of the superintendent, with the superintendent recommending principals based on the racial composition of the student body and on the wishes of the Board member representing the area in which the school is located – with the African-American Board members insisting

15

that African-Americans be named principals of predominantly African-American schools.  (Doc. 59 at 5-6, 10-12).  There is nothing remotely neutral about this practice; it is overtly racial.

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Babineau v. Federal Express Corporation*, 576 F.3d 1183, 1190 (11th Cir. 2009) (internal quotes omitted).  "Commonality [as demanded by Rule 23(a)(2)] requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams*, 568 F.3d at 1355.  The plaintiffs identify the common issue for purposes of their disparate impact theory as their evidence of statistical disparity between the ranks of African-American employees qualified for a principal position and the representation of African-Americans as principals of predominantly white schools.  (Doc. 59 at 16-17).  However, without a specific, facially neutral practice on the table to which the disparity may be traced, the existence of the disparity cannot affect the class and thus cannot satisfy the commonality requirement.

Even had the plaintiffs identified a specific, facially neutral practice, the common issue of its disparate impact would not predominate over the individual issues still to be decided.  After a disparate impact violation is established, in order to obtain individual relief a plaintiff must "sho[w] that he or she was within the class of persons negatively impacted by the unlawful employment practice," and "then the employer must be given an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway."  *In re:  Employment Discrimination Litigation*, 198 F.3d 1305, 1315 (11th Cir. 1999).  This structure echoes the second *Teamsters* phase[11] and, combined

---

[11] As the plaintiffs' own authority puts it, "in order for an employee to obtain individual relief (e.g., back or front pay), an inquiry similar to the remedial stage of a pattern-or-practice disparate treatment claim is generally required."  *Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 161 (2nd Cir. 2001) (citing *In re:  Employment Discrimination Litigation*).

with the individualized issues concerning damages, proves fatal to predominance of the common issue on grounds more fully discussed in Part C.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for class certification is **denied**.

DONE and ORDERED this 28th day of May, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE