# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS JULY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0539-WS-B |
| | ) |
| BOARD OF SCHOOL | ) |
| COMMISSIONERS, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 54). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 55-57, 78-81, 83), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), the seven plaintiffs are African-Americans who are or were employed by the entity defendant ("the Board") as assistant principals.[1] While each of the plaintiffs has served as a principal, the Board has never allowed any of them to serve as principal of a school with a predominantly white student body. This is because the Board "largely excludes African-Americans from the position of principal at schools which have predominantly White student bodies, and segregates African-Americans by limiting them to principalships of schools which have predominantly African-

---

[1] The complaint also names Roy D. Nichols, Jr. as a defendant, both in his individual capacity and in his official capacity as Board superintendent. (Doc. 1 at 6). The plaintiffs later dropped Nichols as a defendant in his individual capacity and substituted his successor, Martha L. Peek, in her official capacity. (Docs. 37, 39).

American student bodies." (*Id*. at 13-14). The single count of the complaint asserts claims under Title VII and Section 1981/Section 1983 for "race discrimination and segregation in employment." (*Id*. at 22).[2]

The plaintiffs have presented evidence that, between September 16, 2007 and July 18, 2011, there were 21 appointments of principals to predominantly white schools, none filled by an African-American. (Doc. 80, Exhibit 36). Although neither side addresses the matter directly, for all that appears each plaintiff claims he or she should have been promoted to each of these positions, and perhaps others as well. (Doc. 78 at 27, 31).

The complaint advances theories of "disparate impact and the pattern and practice of racial discrimination." (Doc. 1 at 14). With respect to the former theory, the defendants assert the plaintiffs' failure to identify any facially neutral employment practice or to demonstrate that any such practice caused a statistical disparity. (Doc. 55 at 17). The defendants do not address the pattern-and-practice theory. Instead, they argue the plaintiffs cannot establish a prima facie case and/or pretext under the *McDonnell Douglas–Burdine* paradigm. (*Id*. at 9-15). Finally, the defendants address the limitations periods under Title VII and Section 1983. (*Id*. at 7-8).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats &*

---

[2] As the defendants note, (Doc. 55 at 6-7), the Eleventh Circuit "ha[s] held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009). The plaintiffs agree. (Doc. 78 at 3-4).

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144

exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue …." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). Conclusory assertions unaccompanied by evidence, explanation or authority thus present nothing for the Court to consider.

The Eleventh Circuit has identified "three distinct Title VII theories: pattern and practice discrimination, disparate treatment discrimination, and disparate impact discrimination." *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004), *overruled in part on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006)). The Court must address all three.

**I. Pattern and Practice.**

As noted, the defendants' motion and brief are silent as to a pattern-and-practice theory. In their opposition to the defendants' motion for summary judgment, the plaintiffs assert that, because they allege the defendants "steer" or "channel" African-Americans to predominantly black schools, they have implicated the anti-segregation provision of 42 U.S.C. § 2000e-2(a)(2) and may prove their prima facie case "by relying on statistical evidence alone." (Doc. 78 at 6). Their sole support for this proposition is *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721 (5th Cir. 1976), a case that involved an alleged pattern and practice of

---

F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

discrimination.  *Id*. at 728.  More recent cases confirm that such a pattern and practice may be shown "through a combination of statistics and anecdotes." *Cooper*, 390 F.3d at 716.  It is thus clear that the plaintiffs seek to support a segregation claim by a pattern-and-practice theory.

The defendants complain that the plaintiffs are attempting to resurrect a pattern-and-practice theory they have previously admitted is unavailable to them.  (Doc. 83 at 3).  The Court agrees.  The plaintiffs successfully sought a stay of their response to the motion for summary judgment on the grounds that, until the plaintiffs' motion for class certification was decided, briefing on the defendants' motion was premature, since that ruling would determine which theory the plaintiffs could employ.  (Doc. 64).  In particular, the plaintiffs announced that "[t]he Eleventh Circuit has held that the named plaintiffs' individual claims will be decided pursuant to a pattern-or-practice standard of proof *if* the class is certified, but not if class certification is denied."  (*Id*. at 2 (emphasis in original) (citing *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 965-67 (11th Cir. 2008)).  Thus, they concluded, "the named plaintiffs' individual claims cannot be fairly briefed or decided until it is first known whether a class is to be certified and, thus, whether a pattern-or-practice or *McDonnell Douglas* mode of proof should be applied …."  (*Id*. at 5).  The Court granted the plaintiffs' motion in express reliance on the plaintiffs' statement of the governing law.  (Doc. 65).

Class certification has now been denied.[4]  By the plaintiffs' own argument, they are thereby foreclosed from relying on a pattern-and-practice theory in support of their individual claims.  The plaintiffs have neither retreated from their prior concession, shown that the Court's adoption of their legal position was incorrect, nor explained why they should not be judicially estopped to attempt such a showing.  In short, no pattern-and-practice theory remains in the case.

---

[4] *July v. Board of School Commissioners*, ___ F.R.D. ___, 2013 WL 2322949 (S.D. Ala. 2013).

5

**II. Disparate Treatment.**

"[T]he analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). That condition is met here, so the same analysis applies to both.

To prove disparate treatment, "a plaintiff may offer either direct evidence or circumstantial evidence." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). The plaintiffs do not purport to have direct evidence of discrimination. The claim is thus governed by the *McDonnell Douglas–Burdine* model developed for cases based on circumstantial evidence. The burden is first on the plaintiffs to establish a prima facie case. If they succeed, the defendants must meet their burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. If the defendants do so, the burden shifts back to the plaintiffs to show that the defendants' proffered reasons are a mere pretext for illegal discrimination. *Holland*, 677 F.3d at 1055-56.

**A. Prima Facie Case.**

"In the failure-to-promote context, the prima facie case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *Brown v. Alabama Department of Transportation*, 597 F.3d 1160, 1174 (11th Cir. 2010); *accord Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). The only element of the prima facie case challenged by the defendants is the application requirement. (Doc. 55 at 10-15).[5]

---

[5] In their reply brief, the defendants argue that the plaintiffs cannot establish the fourth element of their prima facie case because they have not identified specific persons outside their protected class who possessed equal or lesser qualifications yet received promotions. (Doc. 83 at 5, 6). "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*,

The defendants' stance is not clearly stated but appears to be that, in order to be considered an applicant for a position, the plaintiffs were required to submit a fresh application separately for each position each time an opening was advertised. (Doc. 55 at 10-11, 13, 15). It is not obvious that the evidence presented by the defendants supports that proposition but, in any event, the plaintiffs have submitted evidence indicating that a person, having once applied for a principal position, remains indefinitely in the pool of eligible applicants for all future principal positions. (Peek Deposition at 57, 85, 117, 164-66). There is also evidence that each of the plaintiffs applied for principal positions (all but one on multiple occasions),[6] so as to fall within this pool of eligible applicants. The defendants declined to address this evidence or explain how it fails to present a genuine issue of material fact, and their silence precludes them from obtaining summary judgment on this ground.

The plaintiffs also note that "[o]ur precedent demonstrates that a non-applicant may nonetheless establish a prima facie case by showing that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made application a futile gesture." *Equal Employment Opportunity Commission v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1274 (11th Cir. 2002). The plaintiffs have presented evidence that, for the thirteen school years from 1999-2000 through 2011-2012, no African-American has been employed as principal of any predominantly white high school within the school system, that only two African-Americans have been employed as principal of any predominantly white middle school, and that the probability of such a distribution occurring by chance is less than one chance in a billion. (Doc. 79, Exhibit 1).

---

874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale). The defendants identify no reason to depart from this well-established rule, and the Court declines to do so.

[6] (Doc. 81, Exhibit 45). It appears that 16 of these applications were for specific principal positions at predominantly African-American schools, with another eleven "generic" applications for any principal position.

They have also submitted evidence they believed applying for a principal position at a predominantly white school would have been futile in light of this history. (*Id*., Exhibit 19, Responses to Interrogatory 4). The defendants' only rejoinder is that the plaintiffs could not have felt discouraged from applying, since they in fact submitted applications. (Doc. 83 at 5). This is a non sequitur; applying for specific positions at predominantly African-American schools, or applying generically without specifying a school, says little if anything about the plaintiffs' belief that applying for specific principal positions at predominantly white schools would be futile.[7]

The plaintiffs offer several other reasons the application requirement should be ignored. (Doc. 78 at 11-16). Because the defendants have failed to show that the plaintiffs cannot satisfy the application requirement or demonstrate they justifiably believed applying to be futile, it is unnecessary to examine these alternative arguments.

### B. Legitimate, Non-Discriminatory Reasons.

To meet its intermediate burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The defendant "must present specific evidence regarding the decision-maker's actual motivations with

---

[7] The defendants note that plaintiff Matthews applied twice to be principal of a predominantly white school, conduct suggesting she harbored no belief that such applications were futile. (Doc. 83 at 8). The Court need not resolve whether Matthews can rely on the futility exception to the application requirement since, under the plaintiffs' evidence, her repeated applications for principal placed her in the pool of applicants for all principal positions.

The defendants also suggest that other, non-plaintiff African-Americans applied for principal positions at predominantly white high schools. (Doc. 83 at 5). Since the defendants identify no evidence to support their assertion in brief, the Court cannot evaluate or credit it.

regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998). Thus, "[t]he defendant cannot testify in abstract terms as to what might have motivated the decision-maker …." *Id*. Again, "[t]he defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question …." *Id*. at 1184. The plaintiffs invoke these principles. (Doc. 78 at 22-27).

With respect to four of the plaintiffs, the defendants offer no reason for their failure to award them a principal position at a predominantly white school. (Doc. 55 at 11-15). As to these plaintiffs,[8] the Court's inquiry is thus at an end.

With respect to plaintiff July, the defendants assert that, "because of his unsuccessful track record Dr. Nichols would not have considered him for an open position." (Doc. 55 at 11). The evidence does not bear out this assertion. In fact, Dr. Nichols testified that he "would" have considered July, but "having been unsuccessful twice probably would have a couple of strikes against him." (Nichols Deposition at 243). The defendants admit their evidence of a legitimate, non-discriminatory reason as to July is "speculation" and "hypothetical." (Doc. 55 at 11; Doc. 83 at 7). Because they have not offered specific evidence of the actual reason the decision-maker relied on in failing to promote July to principal at a predominantly white school but only speculative evidence of a hypothetical reason, the defendants have failed to meet their intermediate burden.

With respect to plaintiff Reese, Dr. Nichols testified he would not recommend her for a principal position because he had received reports she lacked energy and enthusiasm and was sometimes cranky and hard to get along with. (Nichols Deposition at 266-68). The defendants conclude that "[i]t is doubtful … that she would have been considered." (Doc. 55 at 14). Again, the defendants have offered only evidence as to a reason Reese could justifiably have been denied a principal position but no evidence as to what actually motivated the person or

---

[8] Specifically, plaintiffs Mitchell, Banks, Poe and Dudley-Lewis.

persons who decided not to present Reese up the decision-making chain. Again, they have failed to meet their intermediate burden.[9]

That leaves for consideration only plaintiff Matthews. In the spring of 2010, Matthews applied for the position of principal at Hutchens Elementary School and Citronelle High School, both predominantly white schools in the plaintiffs' estimation.[10]

With respect to the Hutchens Elementary position, the defendants assert that "[n]one of the three (3) Assistant Superintendents [who reviewed applications and selected some applicants for interviews] considered Ms. Matthews to have the necessary skill sets to call her in for an interview." (Doc. 55 at 12). But the only evidence the defendants offer is the affidavit of one assistant superintendent,[11] who observed that Matthews, unlike the candidate eventually selected, "lacked elementary experience and ARI training." (Mohr Affidavit, ¶ 9).[12] The affiant

---

[9] In their reply brief, the defendants impermissibly seek to argue additional deficiencies in Reese's performance. (Doc. 83 at 9-10). The effort comes too late, *see* note 5, *supra*, but it remains in any event an attempt to rely on a hypothetical reason for the decision. *See also Increase Minority Participation by Affirmative Change v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (simply "[i]ntroducing personnel records which *may* have indicated that the employer based its decision on one or more of the possible valid grounds did not suffice" to meet the defendant's intermediate burden) (emphasis in original).

[10] The defendants acknowledge that Citronelle High has a majority white student body, but they insist it "is not perceived as a majority white high school." (Doc. 55 at 12). They rely for this proposition on a snippet of testimony from one of the plaintiffs, which they did not place in evidence. Nor does their one-sentence argument explain how, given its majority-white student population, Citronelle High could be identified for purposes of this lawsuit as anything other than predominantly white.

[11] The defendants cite the affidavit of a second assistant superintendent as well, but she addressed only the Citronelle High position, not the Hutchens Elementary position. (Fox Affidavit, ¶ 11).

[12] The defendants assert that elementary school experience "is a critical factor in looking for an elementary school Principal," (Doc. 55 at 12), but the affidavit to which they cite says no such thing.

does not state that these are the reasons she – much less, all three assistant superintendents – elected not to grant Matthews an interview. Because the defendants have offered evidence only of reasons Matthews could have been denied the position and not evidence that the decision-makers actually relied on these reasons, they have not met their intermediate burden.

Matthews received an interview for the Citronelle High position, and her name was passed on to Dr. Nichols. According to the defendants, Dr. Nichols "stated that in his opinion she did not have the necessary skill set to keep a high school under control and, therefore, did not recommend her" to the Board. (Doc. 55 at 13). According to the testimony on which the defendants rely, Dr. Nichols stated that Matthews has "got a lot of good personality and talents," although "[k]eeping a high school under control is not one of them." (Nichols Deposition at 266). But Dr. Nichols did not testify that this is the reason he selected Richard Dickson for the position rather than Matthews. (*Id*.). Once again, the defendants have failed to present the necessary evidence that their articulated reason is the reason the decision-maker actually relied upon.[13]

### 3. Pretext.

The plaintiffs identify their evidence of pretext as: (1) Judge Hand's 1977 finding that the Board followed a practice of assigning white principals to formerly white schools and black principals to formerly black schools; (2) the statistical analysis of their expert; and (3) testimony that African-American Board members wanted to see qualified blacks given principal assignments at predominantly black schools. (Doc. 78 at 27-28). The defendants offer no response. Since the defendants have failed to shoulder their intermediate burden, the Court need not evaluate the legal or factual strength of the plaintiffs' evidence

---

[13] The defendants do not address the other selections of principals at predominantly white schools, as to which, according to the plaintiffs' evidence, Matthews' applications made her an applicant.

11

of pretext, either in the abstract or in the context of any particular decision by any particular decision-maker concerning any particular plaintiff, any particular predominantly white high school, and any particular slate of candidates.

### III. Disparate Impact.

"[T]o state a prima facie case of disparate impact discrimination, a plaintiff must establish that (1) there is a significant statistical disparity among members of different racial groups; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity." *Cooper*, 390 F.3d at 724. The defendants argue that the plaintiffs have not identified a facially neutral practice and have not demonstrated that any such practice caused a statistical disparity. (Doc. 55 at 17).

The plaintiffs do not assert that the defendants' formalized practice (interviews by a panel, a resulting recommendation to the superintendent, recommendation by the superintendent to the Board, and decision by the Board) produces a disparate impact. Instead, they complain that the defendants "regularly ignore, or simply do not employ" the formalized practice and instead engage in the following practices: (1) seeking out whom they want for a position, even if that person has not applied; (2) making direct appointments by the superintendent, without application or interview; (3) considering "community acceptance" as measured by the Board member whose district encompasses the school; and (4) allowing each Board member to hold veto power over every principal appointment in his or her district. (Doc. 78 at 29-30).

The defendants do not address the practices expressly identified by the plaintiffs as the basis of their disparate impact claim, much less explain how these

practices fall short of the facially neutral standard.[14] Without doing so, they cannot obtain summary judgment on this basis.

The defendants are on no firmer ground with respect to the causation element. As noted, the plaintiffs have presented substantial statistical evidence of a racial dichotomy in the award of principal positions. Under *Clark* and *Transamerica Leasing*, the defendants' mere ipse dixit that the plaintiffs "ha[ve] not ... demonstrated that such practice ... has caused [this] disparity," (Doc. 55 at 17), shifts no burden to the plaintiffs to prove causation on pain of suffering summary judgment.

Nevertheless, the plaintiffs propose that the challenged practices play an indeterminate role in an integrated promotion process, such that causation must be measured as to the selection process as a whole (which their statistical evidence covers) rather than as to the specific challenged practices. (Doc. 78 at 30). The defendants do not address this argument or the appellate cases on which the plaintiffs rely. Instead, the defendants simply repeat their previous, inadequate ipse dixit. (Doc. 83 at 13).

The defendants' final argument is that the plaintiffs have made no showing that not being named principal of a predominantly white school constitutes an adverse employment action. (Doc. 55 at 18-19). But the defendants have made no threshold showing under *Clark*, by pointing to materials on file, that the plaintiffs cannot prove an adverse employment action. They have merely announced, with no citation to evidence, that principals of predominantly white schools are paid on the same basis as principals of predominantly black schools. (Doc. 55 at 19). As noted, such ipse dixits shift no burden to the plaintiffs.

Nor would it matter if the defendants had produced such evidence. First, the defendants' argument depends on the assumption that each of the plaintiffs

---

[14] Instead, the defendants make only the incorrect argument that "[t]he only procedure Plaintiffs have identified is that of the Superintendent making recommendations to the Board of School Commissioners." (Doc. 83 at 12).

13

was at all relevant times already employed as a principal, an assumption the defendants' own evidence disproves. (Doc. 55 at 10-15).

Second, the defendants admit that the compensation of principals depends in part on the "number of students," (Doc. 55 at 19),[15] which means that a person employed as principal of a larger school will be paid more than the same person employed as principal of a smaller school of the same level. There is evidence that, at least at the high school level, the largest schools are predominantly white.[16] Thus, an African-American principal of a predominantly black high school, denied assignment as principal of a predominantly white high school, often or usually will experience a loss of compensation as a result.

In their reply brief, the defendants insert an additional argument: that the disparate impact claim fails because the plaintiffs did not apply for, or otherwise make their interest known in, any of the eight or more positions filled within the Title VII limitations period. (Doc. 83 at 12, 13). The argument fails at multiple points. First, as discussed in note 5, it was raised too late to be considered.[17] Second, the defendants offer no authority for their assumption that an application is necessary to sustain a disparate impact claim. Third, and as discussed in Part II, there is evidence both that the plaintiffs effectively applied for these positions and that any application requirement is excused.

---

[15] The other variables are the grade level (elementary, middle school or high school) and years of experience as a principal. (Doc. 55 at 19).

[16] For the period 2007 through 2011, the largest of thirteen high schools was predominantly black, but the next four largest were predominantly white. Six of the eight smallest high schools were predominantly black. (Doc. 79, Exhibit 1 at 54-60).

[17] While the defendants' principal brief observes that none of the plaintiffs submitted an application for the Mary G. Montgomery position, (Doc. 55 at 17), it does not assert that such failure is relevant, much less fatal to the plaintiffs' claim.

**IV. Limitations Period.**

The parties agree that the plaintiffs' Title VII claims of disparate treatment and disparate impact are subject to a 180-day limitations period, such that the look-back date is February 4, 2011. (Doc. 55 at 8; Doc. 78 at 6). They disagree, however, about the limitations period applicable to the plaintiffs' Section 1983 claim for disparate treatment.

Ordinarily, the statute of limitations for a Section 1983 claim in Alabama is two years. *Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("[T]he two-year limitations period of Ala. Code § 6-2-38(*l*) applies to section 1983 claims in Alabama.") (internal quotes omitted); *accord Alexander v. Fulton County*, 207 F.3d 1303, 1346 (11th Cir. 2000). However, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [i.e., December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). "We conclude that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

As noted, the plaintiffs allege discriminatory failures to promote them from the position of assistant principal, which they occupied, to the position of principal at predominantly white schools. They also allege segregation in the sense of channeling or steering them into principal positions in predominantly black schools.[18] The question is whether these claims were made possible by a 1991 amendment to Section 1981 or whether such claims were available even before those amendments.

---

[18] The Court has ruled in Part I that the plaintiffs cannot attempt to prove this claim under a pattern-and-practice theory. Because the defendants have not addressed the matter, the Court does not consider whether the plaintiffs can attempt to prove their segregation claim by some other method.

15

As it existed before December 1990, Section 1981 provided that all persons shall have the same right as white citizens "to make and enforce contracts." In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Supreme Court held that this language "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id*. at 179. Section 1981 as it then existed thus did not extend to the "imposition of discriminatory working conditions." *Id*. at 177. As to failures to promote, "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id*. at 185. "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id*.

In 1991, Congress amended Section 1981 to specify that, "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Because segregating employees on account of race does not implicate conduct at the initial formation of a contract or impair the right to enforce contractual obligations by legal process, no such claim was available under Section 1981 before December 1990. Assuming without deciding that the 1991 amendment to Section 1981 covers the segregation of employees, that amendment "made possible" the plaintiffs' segregation claim under Section 1983, triggering the four-year limitations period of Section 1658(a).

"In determining whether a particular promotion rises to the level of a new and distinct relation between employer and employee, the court must compare the nature of the employee's current duties, compensation, and benefits and duties, compensation, benefits in the different position in question." *Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir. 1990). *Harrison*,

16

which is invoked by the plaintiffs, (Doc. 78 at 5 n.3), embodies the common-sense notion that, at least in most cases, one must have adequate information concerning both the employee's existing position and the position she sought in order to determine if the differences are sufficient to rise to the level of a "new and distinct relation." The defendants, however, make no such comparison. As to the position of principal, they cite generally to a number of code sections but identify no relevant characteristics. (Doc. 83 at 2). As to the position of assistant principal, they offer nothing at all. Without the necessary comparative evidence, the defendants cannot obtain relief on limitation grounds.

## CONCLUSION

As noted, the Court limits its consideration to arguments timely raised and properly supported, and it does not ignore a party's failure to carry its threshold burden as assigned by governing law. The Court has and expresses no opinion whether any of its rulings might have been otherwise on different presentation or at trial, where burdens often reverse. On the evidence and argument presented, the defendants' motion for summary judgment is **denied**.[19]

DONE and ORDERED this 11th day of September, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[19] The parties' joint motion for stay of pretrial and trial deadlines due to the pendency of the defendants' motion for summary judgment, (Doc. 87), is **denied as moot**.